CLAUGHTON, ET AL. v. JOHNSON, ET AL.

(No. 1851; December 11, 1934; 38 Pac. (2d) 612)

448

For the plaintiffs in error, there was a brief by *Hagens* and *Wehrli,* of Casper.

For the defendant in error, there was a brief by *F. W. Layman,* of Casper. The cause was submitted for both parties without oral argument.

450

BLUME, Justice.

This action was brought by Frank Johnson, on behalf of himself and the co-partnership of Claughton and Johnson, plaintiffs, against A. Claughton, Mae

Claughton and National Realty Company, as defendants, to set aside a certain deed made to Mae Claughton. The court granted the relief prayed for and the defendants have appealed.

The petition alleges in substance: Plaintiff Frank Johnson and A. Claughton are partners. On May 19, 1931, they entered into a written agreement with the National Realty Company for the purchase of lots 5 and 6 and part of lot 7 in Block 178 of the City of Casper, agreeing to pay therefor the sum of $800, with a down-pament of $300 and the remainder to be paid in monthly instalments of $25 each. The agreement and a deed for the lot were placed in escrow with a Casper bank. The partners made monthly payments, sometimes later than agreed, but the realty company did not object to belated payments. By January, 1933, the partners had paid the sum of $775 on the lots, leaving due only the sum of $25.00. On September 10, 1932, defendant A. Claughton agreed to make all payments still due on the contract of purchase. No demand for any amount still due was made on plaintiff, but on January 26, 1933 (the last payment due not having been made), the Realty Company demanded from the Casper bank all papers relating to the contract of purchase, declaring that it was in default and terminated. The Casper bank complied with this demand. Prior thereto plaintiff had inquired of the bank the due-date of the last payment and was informed that it was on February 3, 1933. On January 27, 1933, the Realty Company executed a warranty deed for the property in question to Mae Claughton, wife of A. Claughton; that at that time she had full knowledge of the agreement of purchase above mentioned and of the amount due thereon; that she is not a purchaser in good faith and received the deed for an inadequate consideration. On February 8, 1933, plaintiff tendered to the Realty Company the sum of $25.00. The tender was refused,

but plaintiff is ready and willing to pay that sum at any time. The partners went into possession of the property involved after the agreement of purchase was made, and have continued in possession up to this time and made improvements thereon of the value of $3500. The defendant A. Claughton was asked to join in the instant suit, but he is hostile and refused to do so, and accordingly has been made defendant herein. Plaintiff accordingly prays that the court declare that the rights of the partnership in and to the property have not been forfeited and that it is entitled to a deed therefor, upon such terms and conditions as to the court may appear to be just; that the deed to Mae Claughton be cancelled, and for such further and other relief as to the court may appear equitable.

The defendants answered. For a first defense they claimed that the petition does not state facts sufficient to constitute a cause of action. They admitted that the Realty Company never made a demand on the partnership for the last payment of $25.00 due on the contract of purchase and that a deed was executed to Mae Claughton as alleged. All other allegations were denied. Upon the issues thus formed, the case was tried to the court without a jury. The testimony shows the existence of the partnership as alleged in the petition. It is not altogether in accord. The defendant A. Claughton claims that a brother of Frank Johnson also was a partner, but this is disputed. The agreement for the purchase of the property in controversy from the National Realty Company was introduced in evidence. It is signed by the Realty Company as vendor, and by Frank Johnson and A. Claughton as purchasers. The purchase price stated therein is the sum of $700. The sum of $200 was paid at the time of the execution of the contract, and the balance was agreed to be paid in instalments of $25.00, plus interest, on the first day of every month thereafter till the whole sum would be

paid, time being made of the essence of the contract, with the right of the vendor to cancel it upon default. The last payment apparently was due on January 1st, 1933. A payment was made during that month, but seemingly was the payment that should have been made previously. The contract was cancelled, as alleged in the petition, on January 26, 1933, and a deed for the lot was executed to Mae Claughton the following day, she paying the last instalment of $25.00 then due. It would seem that previous to the execution of the contract of purchase there had been a building on the lots in controversy, but had burned down, with the walls, however, still standing. The building was reconstructed, improvements were made, and bowling alleys were installed. The partnership was formed to conduct such alleys. The evidence is in dispute as to the value of the improvements, nor is it clear to what extent each of the partners contributed thereto. The plaintiff Johnson estimated the value of the improvements at the sum of $2500. He claimed that he furnished labor during the summer months of 1931, and put in cash to the extent of about $175.000. He testified that the monthly installments on the purchase-contract were paid out of the business, except those due after September, 1932, which Claughton agreed to pay. The defendant A. Claughton testified that he contributed the sum of about $1500 to improve the property, and that Frank Johnson put in only the sum of $161.71; that he, Claughton, also made the down-payment of $200 when the contract of purchase aforesaid was signed; that he paid two of the monthly instalments; that nine were paid from the proceeds of the business, and nine others were paid by Mrs. Claughton out of her own money. Mae Claughton, wife of A. Claughton, was a witness in the case. After stating that she made payments of $25.00 each in August, September and October, 1933, and producing the checks to corroborate her,

the following questions and answers appear in the record:

"Q. What was the occasion of your paying your own money on this contract, Mrs. Claughton? A. Well, the Johnsons didn't have any, and they couldn't seem to get any, or wouldn't—I don't know which—and it was up to us either to carry it or let it ride, one of the two. Q. And you paid your money to protect the— A. I figured if I used that much money of my own, it would help Mr. Claughton. Q. Mrs. Claughton, did you ever demand of Mr. Claughton that he repay this money to you? A. What's the use?"

The business of the partnership did not prosper in the way in which the parties had hoped. It seems to have become apparent in September, 1932, that it was being conducted at a loss. Frank Johnson, accordingly, severed his connection with the active conduct thereof, either voluntarily, or because he was invited to do so by his partner. Claughton attempted to run it for a little while longer, but gave it up in the spring of 1933.

The foregoing statement of facts is, we think, sufficient to give a general outline of the situation in this case. It may be—particularly if the testimony of A. Claughton is taken as true—that the plaintiff Johnson does not have a great deal of interest in the property in controversy, and the instant law-suit may ultimately appear as of little use. But this is not an action to dissolve the partnership, or to determine the rights of the respective partners, nor is the contention made herein that the mutual accounts of the parties have been settled. The instant action is one to determine the rights of the partnership as such in and to the property in controversy herein. In their reply brief, counsel seem to think that the court should have adjusted the accounts between the partners in this action. Such adjustment would, it seems, include not only what each of the partners put into the particular property

here involved, but all other matters as well, and it may be doubted whether it would have been proper to complicate this case in that manner. We need not decide the point. It was urged upon us for the first time in the reply brief. It was not asked in the answer filed by A. Claughton, nor, if we read the record correctly, in the trial of the case.

The case was apparently tried, and is argued by plaintiff, defendant in error here, on the theory that the contract of sale in question ought not to have been cancelled by National Realty Company, since it was unconscionable to do so, and that Mrs. Claughton, who had knowledge of all the facts, and who paid a very small consideration for the deed to the property, stands in no better position than the Realty Company. The defendants, plaintiffs in error here, insist that the record does not show that an inadequate consideration was paid by Mrs. Claughton, since it was not disclosed how much was due thereon for taxes and special assessments and what the condition of the property was. But the partners agreed to pay the sum of $700 for the property in May, 1931, less than two years before the deed to Mrs. Claughton was made. Considerable improvements were made on the property, the amount expended being apparently much in excess of the amount which the partners agreed to pay to the Realty Company. Mrs. Claughton had knowledge of all the facts in connection with the purchase of the property by the partners. She paid at best but $25 for the deed. This evidence is sufficient, we think, to show the inadequacy of the consideration paid by her and that she was not a purchaser in good faith.

Plaintiffs in error further urge that in view of the fact that the contract was in default, the National Realty Company had a perfect right to stand upon the terms thereof and to cancel it and thereafter to convey

the title to Mrs. Claughton. It is insisted that the petition fails to disclose a cause of action; that the tender of $25 which plaintiff made to the Realty Company on February 8, 1933, was neither adequate nor timely; that it is not pleaded that the rental value of the property was less than the improvements made; that no collusion between the parties has been alleged and no equities in favor of the plaintiffs appear in the petition. In short, the plaintiffs in error believe that the rules laid down in Quinlan v. St. John, 28 Wyo. 91, 201 Pac. 149, 203 Pac. 1088, and similar cases, are controlling herein, and they rely thereon. In these cases, the vendee brought an action against the vendor mainly to determine as to whether or not the latter had a right to cancel the contract of purchase. The main point in these cases was to determine the right of the vendor as against the vendee. But that is not the situation in the case at bar. There is no real contest between the vendor and vendee. The vendor in this case claims no further right in the property. It has conveyed it, and that to the wife of a co-partner. Simply because it may have had the right to cancel the contract according to its terms, and simply because it had the right to convey it to whom it pleased, is by no means determinative of the rights of the plaintiff herein as against Mae Claughton. That is illustrated by many cases. Thus a landlord may have the right to make a renewal lease to one of two or more partners, or to a third person, but that does not necessarily prevent a court from declaring that the new lease is held in trust, as we shall see later on. Hence while it may be that the case could be affirmed on the ground that it was unconscionable, under the circumstances, for the Realty Company to cancel the contract, and on the ground that Mrs. Claughton, knowing all the facts, was not a purchaser in good faith, it is not necessary to determine that point, for the reason that the facts in this case as

pleaded and proved, including the relationship of Mrs. Claughton to one of the partners, at once suggest that the case may easily be decided on principles of law altogether different from those involved in Quinlan v. St. John, supra, and similar cases.

That this court is not bound to decide the case on the theory on which it has been presented was fully discussed and shown in Wyuta Cattle Co. v. Connell, on rehearing 43 Wyo. 135, 299 Pac. 279, 3 P. (2d) 101, and on rehearing of Montgomery v. Mutual Life & Acc. Ass'n., (Wyo.) 33 P. (2d) 398. As early as 1896 this court intimated that it might be doubtful whether the fact that the trial court decided the case on the wrong theory would be material and held that the case would not be reversed where the record did not disclose the theory on which it was decided. Rock Springs National Bank v. Luman, on rehearing 6 Wyo. 123, at page 167, 42 Pac. 874, 43 Pac. 514. In the case at bar it does not appear on what theory the court decided it. And the principle which must govern us here is that where the result reached is correct upon any theory, the judgment must be affirmed. 4 C. J. 1132; Chesney v. Valley Live Stock Company, 34 Wyo. 378, 244 Pac. 216; 44 A. L. R. 1255. And that the result reached herein is correct will appear clearly from what follows.

The defendant A. Claughton and the plaintiff Frank Johnson were partners. They bought the lot in question together and for the benefit of the partnership. The law is definite and settled that A. Claughton could not have taken the title in his own name and thereby deprive the firm of the benefit of the purchase. Each partner is the agent of the partnership as to all matters coming within the scope of the relationship. Each occupies a fiduciary relationship to the others in all matters pertaining to the partnership enterprise, and the utmost good faith is required of each in their relations

with each other. 47 C. J. 771-772; 20 R. C. L. 878-879. In fact it has been said that "the authorities unanimously agree that there is scarcely any relation in life which calls for more absolute good faith than the relationship of partners." Stem v. Warren, 96 Misc. 362, 161 N. Y. 247. Accordingly it is said in 47 C. J. 800:

"A partner may not purchase, for his own benefit, property of any kind in which the partnership is interested, nor lease property when the firm is entitled to the benefit of such lease, nor secure a valuable contract for himself which it was his duty to procure for the firm. If he does, he holds in trust for the benefit of the partnership the property so purchased or leased or the contract he has obtained and must account to the firm for the profits of the transaction, unless it appears that the co-partner consented to the transaction."

See further, cases in 65 C. J. 478, note (d). And it has been held that where a general fiduciary relationship exists, it is not necessary that a conveyance be taken with a fraudulent intent, in order to establish a constructive trust. Alaniz v. Casenave, 91 Cal. 41, 27 Pac. 521; Talor v. Davies, 41 Ont. L. 403; Consumers Co. v. Parker, 227 Ill. App. 552; Pulfrey v. Wid, 340 Ill. 553, 173 N. E. 87; Schaffer v. Letcher, 99 Okl. 188, 226 Pac. 384.

It is clear, then, as stated before, that A. Claughton could not have taken the title to the property in question in his own name as against the partnership. The simple question then remains as to whether or not that could be done in the name of his wife, under the circumstances shown herein. It is held that the duties and disabilities imposed on one by the confidential relation which he holds to another extends to his "agents or subagents, clerks, assistants and employees, to his attorney and to his partner in business." 65 C. J. 487. Are they extended also to his wife, under the circumstances shown herein? It is said in Iroquois Iron Co.

v. Kruse, (CCA) 241 Fed. 433, 442, that if a man may use his confidential relationships "for the benefit of a relative, an employer, an employee, or a partner, it is idle to prohibit him from using them for his own individual advantage." And so it may well be said, that the rule that a partner cannot take property in his own name, which he should take in the name of the partnership, would be worthless, if he can do so in the name of his wife under the circumstances disclosed by the record before us. See, Edlin v. Moser, 176 Ark. 1107, 5 S. W. (2d) 923, where it was held that one partner can not evade the rule by fraudulently taking the title to property in the name of a third person. True, the record does not directly disclose that A. Claughton took the title in the name of his wife, or that it was thus taken by collusion of the two. But it can be hardly open to question that the circumstances shown herein strongly suggest that to be true, and the trial court clearly had the right to so find, as it probably did. In fact, Mrs. Claughton herself testified that the payments which she made in the fall of 1932 were made for the benefit of her husband, and she did not intimate that the last payment of $25.00, or the previous payments which she made, were made by her with any different intention. The contrary may be gathered from her testimony as a whole. We cannot, accordingly, hold that the plaintiff should have been required to repay Mrs. Claughton for the amounts which she paid, and must conclude that she holds the title in trust for the benefit of the partnership.

Some points relating to the insufficiency of the petition in this case are urged by the defendants, but all upon the theory heretofore mentioned, namely, that the Realty Company was justified to cancel the contract of purchase, in accordance with Quinlan v. St. John, supra, and similar cases. To discuss the points so raised

upon that theory would subserve no good purpose, and for us now to decide what are the necessary allegations in a case in which a holder of a title must be held to hold it in trust, would seem to be improper.

We might say that one of the facts urged is that the petition states but a conclusion of law when it alleges that the consideration paid by Mrs. Claughton was inadequate. It was expressly stipulated between the parties that Mrs. Claughton paid but $25.00 for the deed, and it would, accordingly, be highly technical to reverse the case, simply to have the petition amended in that respect. The evidence in the case is sufficient to give the plaintiff relief. All the vital evidence was admitted without objection, and if, perchance, the petition is insufficient in some respects, it may, in accordance with many previous decisions of ths court, be regarded amended.

In view of our conclusion, the method stated in the judgment herein of giving specific relief seems, if not wrong, at least somewhat cumbersome, and should, we think, be modified. We see no particular or good reason why the National Realty Company should make another deed. The title should be declared to be held in trust for the partnership, and if Mrs. Claughton refuses, within 30 days hereafter, to execute a deed transferring the property to it, the title should be declared to be in the partnership free and clear of any and all claims of Mrs. Claughton. The money paid by her, however, should be held, in accordance with her testimony, to have been paid for the benefit of her husband, and should be considered in winding up the partnership as having been paid by him, so that he will get proper credit therefor. As so modified, the judgment herein will be affirmed.

*Modified and Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.