Albert W. JONES and Edna Mae Jones, Husband and Wife, Appellants, (Defendants below),

and

Elja A. Jones, (Defendant below),

v.

Dorothy C. CLARK, Appellee, (Plaintiff below).

No. 3479.

Supreme Court of Wyoming.

Oct. 5, 1966.

Birchby & Birchby, James E. Birchby, Sheridan, for appellants.

Jack Wolfe, Sheridan, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Dorothy C. Clark, the widow of Count W. Clark, deceased, sued Albert W. Jones and wife, and Earl A. Jones, who was known as Elja Jones, for restitution of certain property sold the defendants Albert W. Jones and wife under an agreement dated May 24, 1963, and occupied by Elja Jones under a rental agreement, also asking $30 per month from Elja Jones for withholding possession since October, 1964.

The defendants cross-claimed, and on trial to the court, without jury, judgment was given plaintiff, and defendants' cross-claim was denied. Defendants Albert W. Jones and his wife appealed.

Clark and his wife, the plaintiff below, being the owners of certain lots and parcels situate in the City of Sheridan, Wyoming, had entered into an agreement on May 24, 1963, with Albert W. Jones and Edna Mae Jones, his wife, for the sale of those properties for the sum of $2,500, the purchasers making a down payment of $250 and agreeing to pay the balance of $2,250 by making monthly payments of $25 each, on the 7th day of June, 1963, with like payments of $25 to be made on the 7th day of each month thereafter until the unpaid balance of $2,250 with interest at five per cent per annum was paid in full. The agreement expressly made time the essence of the contract. The purchasers also executed their promissory installment note to the owners in the sum of $2,250 conditioned for payments as agreed, and making time the essence of the note.

Although the purchase agreement called for the $25 monthly payments to be made at the office of Clark, there was testimony that the contract for payment of the $25 monthly payments was left with the First Federal Savings & Loan for collection, and thereafter Mr. Jones made one payment there on June 5, 1963, thus Jones evidently made no objection to this change in the place for payment. However, no payments were made for the following months of July and August, 1963, and on August 12,

1963, Clark picked up all papers from the association and said the contract was void.

On September 8, 1963, Albert Jones paid Clark $100 for the installments of July, August, September, and October, 1963.

On November 26, 1963, Mr. Clark rented the property to defendant Elja Jones, a brother of Albert Jones, on a monthly rental basis of $30 per month, which amounts were paid by Elja up to the time of Mr. Clark's death which occurred on October 1, 1964, but no further payments were made by Elja thereafter.

Following Mr. Clark's death, Albert Jones came to Mrs. Clark and wanted to pay her $25 on the "contract," but she refused to accept it, informing him the "contract" was broken.

The defendants by answer claimed:

(1) Albert Jones' payment of $100 made September 8, 1963, for the past due payments of July, August, and September, 1963, and for the October, 1963 payment, constituted a waiver of the Albert Jones' past defaults and thereby plaintiff was estopped from claiming a forfeiture of the purchase agreement;

(2) Plaintiff's acceptance of the $100, without notification the provisions of the agreement would thereafter be strictly enforced, was a waiver of strict enforcement of that provision and estopped plaintiff from declaring a forfeiture of the agreement; and

(3) Elja's payments of $30 per month were made by him in behalf of his brother Albert's commitment to make the $25 per month payments on Albert's contract of purchase.

By counterclaim, the defendants asked credit for $60 as the difference between the $30 per month paid by Elja over a period of 12 months and the $25 per month payments called for by the agreement, and alleged plaintiff had refused the $25 payments tendered after October 7, 1964, but that all such payments for all months thereafter had been deposited in an escrow account awaiting plaintiff's acceptance there-

of. The counterclaim also asked $498 for alleged improvements placed upon the property.

Upon trial to the court, without jury, it was decreed (1) Plaintiff was the owner and entitled to possession of the property, (2) defendants surrender the property to plaintiff in as good condition as when entered into by defendants, (3) defendants pay plaintiff $315 as reasonable rental for the premises during defendants' unlawful occupation of the same from the 5th day of October, 1964, to the 25th day of August, 1965, the date of the hearing, (4) defendants pay the costs in the sum of $12.25, and (5) the agreement of purchase be cancelled. Judgment was entered accordingly.

Only defendants Albert W. Jones and his wife Edna Mae Jones have appealed, asserting as grounds therefor:

(1) The judgment was contrary to law and unsupported by evidence;

(2) The acceptance of the $100 payment on September 8, 1963, waived defaults of the July, August, and September, 1963, payments;

(3) No subsequent notice was given that future payments must be made according to the agreement;

(4) The plaintiff, on November 18, 1963, affirmed the agreement by a letter from her counsel demanding payment of entire balance due;

(5) The court erred in excluding appellants' evidence when offered to prove plaintiff's waiver of timeliness of payments;

(6) The court erred in denying plaintiff opportunity to make offers of proof; and

(7) The court erred in giving plaintiff judgment against appellants Albert W. Jones and his wife in the sum of $315 when no such relief was prayed by plaintiff.

From the evidence it is clear that defendants Albert Jones and his wife made the down payment of $250 required by the agreement, and on June 5, 1963, made a payment of $25; that no payments were made on or before the 7th day of the months of July, August, or September, 1963, but on September 8, 1963, plaintiff's husband, Mr. Clark, accepted $100 from the purchasers which was said to represent $25 payments for the defaulted months of July, August, and September, 1963, and for the ensuing month of October, 1963, thus leaving the Albert Joneses in good standing through the month of October, 1963, and until November 7, 1963; that on November 18, 1963, Mr. Clark's attorney notified the purchasers they were in default of their agreement and made demand upon them for immediate payment of the entire balance due upon the purchase price; that thereafter and on November 26, 1963, Mr. Clark rented the property to defendant Elja Jones on a monthly rental basis of $30 per month, which rental was paid monthly by Elja Jones until Mr. Clark's death on October 1, 1964, the property then being used and occupied by Elja Jones as well as by the purchasers during those months and thereafter, but the $30 per month rent was not paid after Mr. Clark's death; that shortly after Mr. Clark died Albert Jones came to plaintiff and said he came to pay the $25 on the contract. Plaintiff refused to accept the payment, informing Albert Jones he had broken the contract, and her husband had cancelled it and that Elja, Albert's brother, was paying rent for the property. On October 9, 1964, plaintiff, in writing, notified both Albert and Elja Jones to quit and vacate the property, and on November 27, 1964, the attorney for Albert Jones and his wife, by letter, offered plaintiff a check dated November 27, 1964, in the sum of $25, "For October, 1964 Payment on Agreement for Warranty Deed with Mr. & Mrs. Albert Jones," and another check, also dated November 27, 1964, in the sum of $25 with similar notation for the month of November, 1964.

█ Under these circumstances it may not be said the judgment was unsupported by evidence, nor that it was contrary to law.

■ While it is true that the complaint only alleged a default in the required $25 per-month payments due on the 7th day of each of the months of July, August, and September, 1963, and the judgment found the appellants had defaulted in their payment in the month of November, 1963, the evidence, received without objection, supported that finding. When it thus appeared there had been a default other than that pleaded, a motion to amend, to conform the complaint to the evidence, should have been made. However, under prior rulings of this court and prevailing decisions elsewhere, even though such a motion was not made and the pleading amended accordingly, where evidence received without objection supports the findings of the court, the judgment may not be disturbed on that ground alone. Claughton v. Johnson, 47 Wyo. 447, 461, 38 P.2d 612, 616, id., 47 Wyo. 536, 542–545, 41 P.2d 527, 529–530; Rosenblum v. Sun Life Assur. Co. of Canada, 51 Wyo. 195, 209, 65 P.2d 399, 403, 109 A.L.R. 911; Urbach v. Urbach, 52 Wyo. 207, 230–231, 73 P.2d 953, 963, 113 A.L.R. 889; Havens v. Irvine, 61 Wyo. 309, concurring opinion 327–328, 157 P.2d 570, 576, 159 P.2d 366; Cooley v. Frank, 68 Wyo. 436, 457, 235 P.2d 446, 453; Marken v. Empire Drilling Company, 75 Wyo. 121, 135–136, 293 P.2d 406, 411; North American Uranium v. Johnston, 77 Wyo. 332, 360, 316 P.2d 325, 336; Lore v. Town of Douglas, Wyo., 355 P.2d 367, 369; Porter v. Wilson, Wyo., 357 P.2d 309, 310. See also 41 Am.Jur., Pleading, § 310, pp. 505–506; 5 Am.Jur.2d, Appeal and Error, §§ 730, 731, pp. 174–176; 71 C.J.S. Pleading § 591, pp. 1173, 1174; Annotation, 118 A.L.R. 1208, et sequens.

Furthermore, W.R.C.P. 15(b) makes express provision governing the matter.

We need not decide whether the September 8, 1963, payment waived the defaults of July, August, and September, 1963, inasmuch as the judgment was not based upon those defaults but upon default in the payment due November 7, 1963. However, it seems that appellants claim the acceptance of those defaulted payments waived the prompt payment of future payments, or at least excused the failure to make the seventh-of-the-month payments on time, and therefore the tender, made almost a year after the last payment was made, kept the agreement in force.

The record does not show that after the $100 was accepted the Clarks expressly notified the purchasers that all future payments must be made according to the agreement. Neither does the evidence we consider show the purchasers tendered or offered to pay the stipulated monthly amounts at any time during the month of November, 1963, or at any later time until almost a full year had elapsed. The evidence does, however, show the purchasers had knowledge that Clark was claiming they had defaulted their agreement and he was exercising dominion over the property by renting it to Elja Jones, yet they voiced no protest nor did they make any objection even though they knew Elja had rented the premises and thereafter they continued to occupy the premises together with Elja Jones. Also, it was only after Clark's death that they made any tender purporting to be a payment under the agreement, and then they offered payment for only a single month, later claiming Elja's payment of $30 per month rental was in fact intended as a payment on their behalf, which claim however was refuted by both testimony and written evidence.

■ The appellants' argument that they were entitled to notice that in the future payments becoming due after the $100 payment must be made in accordance with the purchase agreement is not persuasive even though some authorities are offered in support of that claim. The statements made by those authorities must be considered in the light of the circumstances upon which they were pronounced and hence they are not controlling authority nor do they establish an inviolable rule of law to be followed in all cases and where circumstances are materially different as is the case in the instant matter. Thus it is said in 55 Am.Jur.,

Vendor and Purchaser, § 119, p. 595, "However, the vendor's acceptance of one or more payments subsequent to the time specified in the agreement does not necessarily waive his right to object to the vendee's delinquency as to future payments, or preclude him from insisting on strict performance in the future and declaring a forfeiture for the vendee's default as to future payments," citing Boone v. Templeman, 158 Cal. 290, 110 P. 947, 139 Am.St.Rep. 126; Annotation 9 A.L.R. 1001, and saying (n. 15), "Where the purchase money is payable by instalments, the acceptance of the payment of a single instalment after the time fixed will not preclude the vendor from declaring a forfeiture for default in the payment of a future instalment." There is a considerable difference between cases where a vendor expressly agrees that payments may be made after default and cases where there has been but a single acceptance of overdue payments. Hence, cases dealing with the first circumstance mentioned are entirely inapplicable.

The purchasers in the case now before us had actual notice that vendors were taking the position that the agreement had been breached and that they were asserting their right of re-entry and exercising their dominion over the property, yet the purchasers failed to make any objection or any tender whatsoever until almost a year of defaults had passed and they were completely quiescent when Clark rented to Elja. Theirs was not a case where purchasers were lulled into a sense of security by the acts and conduct of the vendor, nor were they left in ignorance that the vendor was insisting upon payment in conformity with the agreement.

Due to the death of Clark, there is necessarily absent from the record any evidence of what may have taken place between Clark and Jones when Clark signed the receipt for the $100. We are, however, no more entitled to infer that this acceptance implied permission that all future payments might be belatedly made at the whim or convenience of the purchaser than we are entitled to conclude that future payments of the debt were to be made in conformity with the agreement. This is not a case where the vendor repeatedly received payments after they became due, thereby establishing a course of dealing inconsistent with insistence on future strict adherence with the agreement.

Although the purchasers were not notified in so many words that subsequent to the $100 payment all future payments must be timely made, they were advised in writing on November 18, 1963, that they were in default of their agreement, thus at least impliedly noticing the purchasers that strict performance of their contract was being insisted upon. Notwithstanding that notice, the purchasers failed to tender any payment until after the death of Clark almost one year after the date of any previous payment or tender of payment and then the only offer they made was to pay $25.

In successive attempts to prove the sellers had waived the requirement for prompt payment of the stipulated monthly amounts, the appellants were interrogated respecting a purported conversation between all parties to the agreement which purportedly took place following the execution of the agreement. After the court had stricken testimony that appellants in that conversation had stated their payments might sometimes be late, and the court had refused to permit appellants to testify as to what Clark said in reply on the ground such answers would constitute an attempt to vary a written instrument, the appellants offered to prove they had stated as indicated above and that the conversation related to their being permitted to make late payments.

Later, when appellant Jones was asked what was stated in the conversation between him, his wife, and Clark in relation to the making of late payments, objection of no foundation, attempt to vary terms of written instrument, a statement not made in presence of parties to the action, no opportunity to cross-examine, and barred by the "dead man's statute," was properly sus-

tained because of the additional grounds stated, whereupon appellants stated they wanted to make an offer of proof. When this offer to make proof was denied them, appellants asked to argue the law, but this request was also denied and counsel was instructed to continue the examination. It might have been better if the court had permitted counsel to present his views of the law involved.

Again when appellant Jones was asked if the matter of house painting entered into a conversation between Elja, Clark, and Jones, and he answered, "Yes," objection was made and request to strike was sustained following which appellants' counsel stated the answer would be that there had been a conversation in relation to painting a house to be applied as a credit to the payments due under the contract, the court ordered counsel's remarks stricken from the record and admonished counsel that if any more attempts were made "to mess up the record by just going over on the rulings of the Court and arguing the point, drastic action" would be taken, and the court told counsel that he might ask permission to make an offer of proof and that, if granted, he might do so. Counsel then asked such permission which was denied.

Later when testimony was attempted to be elicited from appellant Jones that the deceased made some statement in regard to the November, 1963, payment when only Jones and his brother were present, and objection was sustained, appellants' counsel, upon his request, was permitted to make an offer of proof, but, when commencing to do so, was interrupted by the court saying the offer of proof had to be on a point of law but not as to what the witness would say, which would not be a proper offer of proof, counsel replied, "We would show that this was a statement made with the deceased and that plaintiff is not—and that plaintiff was not complaining within a representative status in this case," and this offer was denied.

Appellants' offer to prove Clark refused to deal was denied.

When the court sustained an objection to a query as to how he intended the payments to be made of the two $25 checks offered to Mrs. Clark, counsel asked permission to make an offer of proof which permission was refused by the court.

During the examination of the wife of Albert W. Jones much the same rulings and exchanges between court and counsel took place respecting exclusion of testimony and regarding conversations with the deceased followed by offers of proof.

■ The manner in which the proprieties and rights of parties to make legitimate offers of proof when objections are sustained to counsel's interrogations were dealt with was unfortunate as it raises some doubt if there was a clear understanding between court and counsel as to the right of litigants to make offers of proof. There is at least a twofold purpose in according to litigants the right to make *offers* of proof. It must be borne in mind that the right is merely to *offer* the proof—not the right to *introduce* it. The right to offer is therefore almost absolute which is subject only to the court's discretion to *reasonably* restrict repetitious effort to offer the same or substantially the same type of proof which has been previously offered and its reception denied. The first purpose of such offers is to specifically advise the trial court of the nature of the testimony or evidence expected to be elicited by the interrogation. This is to sufficiently advise the court of the nature and character of the offered evidence and thereby enable the court to be in a better position to correctly rule upon its admissibility. The second purpose is to ensure that the whole matter will be exhibited in the record in order that an appellate or reviewing court may be sufficiently advised and enabled to fairly pass upon the correctness of the trial court's rulings.

■ The court's admonitions, although somewhat harshly given, might reasonably be interpreted as requiring counsel only to point out the relevancy, materiality, and competency of the offered evidence. This,

of itself, was not improper. In 53 Am. Jur., Trial, § 99, p. 88, it is pointed out that:

"* * * As a general rule, a party offering evidence must show its relevancy, materiality, and competency, and when he seeks to introduce evidence which does not appear to be relevant or competent, or propounds to his witness an interrogatory which appears to call for an irrelevant or incompetent answer, he should make a formal offer of proof showing what testimony he proposes to adduce, and, when necessary, his intention to prove other facts which will render the evidence relevant or competent; the purpose for which apparently irrelevant or incompetent evidence is offered should be disclosed. * * *"

However, the court's remarks could as reasonably be taken to deny counsel the right to advise the court of the nature and character of the evidence offered. This would be improper as the litigants were not only entitled but were required to bring to the court's attention of what the offered proof would consist.

As to the need to ask for and receive the court's permission to make an offer of proof, the following is found in the same section of Am.Jur., p. 89, as that referred to above:

"Apparently, there is and could be no rule requiring a party first to obtain the court's permission to make an offer of proof. The situation of a litigant invites evidence to sustain his position. Neither the court nor opposing counsel can know whether evidence which a party desires to present is competent or material until it is proffered. When an offer of proof is made, the court should assume that the facts stated can be proved by competent evidence, and rule on the offer, leaving objections to the manner of proof to be decided later. The materiality and relevancy of an offer of evidence must be apparent when the offer is made, to put the court in error in excluding it. * * *"

This is actually for the purpose of informing the court so that it may rule intelligently on objections made or to be made to its admissibility as well as to preserve such ruling should it become proper to review the same. Subject to the right of the court to refuse undue repetition, the right of a litigant to offer proof is absolute, although it is the court's equal prerogative to rule the evidence inadmissible

In at least one of the instances mentioned above, appellants' offer of proof was as to a purported conversation between *all* parties to the agreement which talk was said to have taken place while they were on their way to the bank immediately following the execution of the agreement, and in which conversation the matter of making late payments of the stipulated amounts was represented as having been discussed. This offer of proof followed the sustaining of an objection to a question regarding such a conversation upon the ground that it was an attempt to vary the written agreement that time was of the essence. This ruling of the court was erroneous. In fact the question itself necessarily presupposed the agreement required prompt payments and that the time of such payments was of the essence. However, the question was intended only to elicit an answer showing that this requirement had been waived. There is a material difference between varying the terms of a contract and of waiving them. When attempt is made to introduce evidence of a parol agreement made prior to or contemporaneous with a written instrument and which evidence is inconsistent with the writing, that is an attempt to vary the terms of the written instrument. The offer to prove a conversation occurring subsequent to the execution of the agreement, even though in this case that conversation occurred shortly after the signing of the contract, and purports to forgive strict performance of its requirements, was not an attempt to vary or change the terms of the contract but only an attempt to show certain performances required by the writ-

ten instrument had been waived. See 17 Am.Jur.2d, Contracts, § 261, pp. 664–665.

■ When the offer was made to prove (1) there was a conversation between *all* parties to the agreement, namely Mr. Clark, Mrs. Clark, Mr. Albert W. Jones, and Mrs. Albert W. Jones, and (2) in such conversation the matter of the Joneses making late payments of the stipulated amounts was discussed, it was error to exclude such evidence, not only because it was not an attempt to vary the terms of a written agreement and was merely an effort to show some of the agreement's requirements had been waived, but because in that particular instance such testimony is expressly authorized by § 1–140, W.S.1957, referred to as the "dead man's statute."

This statute provides, in appropriate part:

"A party shall not testify where the adverse party * * * is an * * * assignee * * * of a deceased person, except:

* * * * * *

"3. If a party, or one having a direct interest, testify to transactions or conversations with another party, the latter may testify as to the *same* transactions or conversations;

* * * * * *

"5. In an action or proceeding by or against a * * * joint contractor, the adverse party shall not testify to *transactions* with, or admissions by, a * * * joint contractor since deceased, unless the same were made in the presence of the surviving * * * joint contractor; * * *." (Emphasis supplied.)

The plaintiff Mrs. Clark was the assignee of her husband and had a direct interest in the transaction. She was also a joint contractor with her husband in the making of the agreement to sell the property. Therefore, under exception 5, § 1–140, W.S.1957, the Albert W. Joneses were entitled to introduce evidence of any conversations where both the deceased and Mrs. Clark were present. Furthermore, Mrs. Clark, on her direct examination, had testified she

had not had any conversation with either Mr. or Mrs. Albert W. Jones, which evidence posed an issuable fact in the face of appellants' offer to prove she was present at such a conversation.

Thus it clearly appears that the appellants were entitled to place before the court such testimony as they were prepared to give as to what was said by all parties present during that purported conversation.

Of course, this does not imply that any such testimony, when received, must be accepted as true. Its verity and effect, like all other testimony, must be weighed and considered with all other evidence relating to the purported conversations, and it is the prerogative of the trier of facts to accept or reject it as controlling.

Plaintiff's letter of November 18, 1963, declaring the purchasers' default of their agreement might be interpreted as rescinding any waiver which may be deemed to have been made by virtue of what the owners were purported to have said in the excluded conversation. But that interpretation, like the question of what was said, will still require a determination by the trial court. · Therefore this error in excluding evidence respecting the conversation requires that the judgment be reversed and the case remanded for retrial with direction to admit relevant conversations when all parties to the agreement were present.

■ Although the plaintiff demanded full payment of the balance due upon the purchase price when notifying the purchasers they had breached the agreement, she did not thereby forego resort to the alternative remedy of re-entry which was provided by the agreement.

The agreement provided that in case of the purchasers' failure to perform all or either of their covenants or promises the owners should have the right to declare the contract void and to recover the premises, to hold and retain all moneys paid on the contract as liquidated damages, to take immediate possession of the premises, and

to recover damages for any holding over by the purchasers. The promissory note provided that time was of the essence and gave option to the holder of the note to declare the entire balance of the note due in the event of default in payment of any installment. Thus, upon default, under the agreement the owner was given the right to rescind the contract by declaring it void, to recover the premises, to retain payments made, to retake possession, and to have damages for detention, while under the promissory note the purchasers were given the right to accelerate payment of the entire balance due upon the purchase price. While these two instruments must be considered and construed together (17 Am. Jur.2d, Contracts, § 264, p. 668), it would appear that plaintiff's first decision to claim immediate payment of the entire balance due under the terms of the note should not preclude plaintiff from abandoning that remedy and electing to adopt the remedies provided by the agreement. In 25 Am. Jur.2d, Election of Remedies, § 15, p. 658, it is stated:

"As a general rule, acts prior to the actual commencement of legal proceedings indicating an intention to rely upon one remedial right do not constitute an election which will preclude the subsequent prosecution of an action or suit based upon an inconsistent remedial right, unless the acts contain the elements of an estoppel in pais. * * *"

And in Miller v. Hartford Fire Insurance Company, 251 Iowa 665, 102 N.W.2d 368, it is pointed out that nothing less than the commencement of an action should amount to an election of remedies. In 28 C.J.S. Election of Remedies § 17, p. 1094, similar statement is made, citing other cases as authority.

After plaintiff's notice to defendants of their default and demand that payment of the entire balance remaining due under the contract be made forthwith, the defendants made no response whatever and neither paid nor tendered payment of any amount, so it cannot be said there was any estoppel in pais or that any equity arose in their favor by reason of the notice given them.

The final error asserted by appellants is because judgment in the sum of $315 for wrongful withholding of the premises was rendered against them jointly with Elja Jones, while the prayer of plaintiff's complaint asked judgment only against Elja for the withholding. Of course the prayer is not an allegation of the complaint. United States Fidelity & Guaranty Co. v. Nash, 20 Wyo. 65, 121 P. 541, 124 P. 269; State v. Moore, Wyo., 356 P.2d 141. However, the complaint alleged all of the defendants withheld possession of the property, and the evidence showed this was true. As that evidence supported a finding that all the Joneses used and occupied the premises during the period for which this money judgment was given, and plaintiff had prayed for "such other or further relief" to which she might be entitled, we believe this contention to be without merit.

Because of what we have said respecting the error in refusing to admit evidence as to a purported conversation concerning the time for making payments which was represented as having taken place subsequent to the execution of the agreement and in the presence of all parties to that contract, the rights of the appellants were prejudiced, and, therefore, the judgment of the court is reversed and remanded for a new trial.

Reversed and remanded for new trial.